Filed 8/22/14  P. v. Rosalinda C. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ROSALINDA C.,<br><br>     Defendant and Appellant. | A140749<br><br>(Alameda County<br>Super. Ct. No. RM08378235) |

Rosalinda C. has been committed as a developmentally disabled person who is a danger to herself or others under Welfare and Institutions Code[1] section 6500 since 2008 through an initial commitment when she was 18 years old and repeated recommitments, most recently on January 9, 2014, recommitting her until November 15, 2014.  Her attorney on appeal has filed a brief raising no specific issues, asking us to conduct an independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Conservatorship of Ben C.* (2007) 40 Cal.4th 529 (*Ben C.*).  Although *Wende* review is not mandated, our discretionary review of the record reveals no meritorious issues for briefing.

### FACTUAL AND PROCEDURAL BACKGROUND

The latest petition for recommitment was filed November 6, 2013.  On November 7, Rosalinda was ordered temporarily detained at California Psychiatric

---

[1] All statutory references, unless otherwise indicated, are to the Welfare and Institutions Code.

Transitions (CPT) pending a hearing. Evidence was heard January 8 and 9, 2014, after which the court granted the petition. The immediately prior recommitment was reviewed by us in a partially published opinion (*People v. Rosalinda C.* (2014) 224 Cal.App.4th 1). That opinion addressed, in the unpublished portion, issues related to insufficiency of the evidence to support the recommitment. The evidence in the present appeal was similar to that in the prior recommitment.

Dr. Scott Turpin, a psychiatrist with CPT and Rosalinda's attending psychiatrist, testified by stipulation as an expert. He opined that Rosalina is in need of continued conservatorship. He diagnosed her with (1) "mental retardation, mild," (2) "pervasive developmental disorder not otherwise specified" (which in the new DSM-V is called "autism spectrum disorder"), (3) "schizophrenia . . . multiple episode," and (4) "obsessive-compulsive disorder."[2]

Turpin defined mental retardation, mild, as "cognitive limitations or thinking limitations" generally associated with some IQ scored in the past under 70, as well as "difficulties in daily adaptive functioning." Turpin had observed symptoms of the diagnosis in Rosalinda: "Things that I would say are associated with that diagnosis would be sort of limited coping or social skills, poor impulse control, . . . a sort of limited flexibility in approaching problems." Poor impulse control means "[b]asically a difficulty in curbing things like impulsive aggression: striking out at other people, jumping to an action without maybe being able to step back and consider some more socially appropriate alternatives."

The "autism spectrum disorder" diagnosis basically refers to "difficulties with communication or social interaction," difficulties "understanding social interactions or emotional [cues] from other people," "maladaptive behavior," "poor coping skills," and "repetitive stereotyped behavior." Rosalinda had exhibited symptoms such as problems in establishing relationships, maintaining friendships, and getting along with others. One

---

[2] She had also been diagnosed in the past with borderline personality disorder and personality disorder not otherwise specified, but Turpin did not diagnose her with those disorders and did not put much weight on those diagnoses.

of the symptoms of autism spectrum disorder or borderline personality disorder is "hitting others when she is feeling either upset or jealous instead of being able to talk it through or do something else like go outside for a walk until she has cooled off." The last incident of violence was when she hit her team leader on December 6, 2013.

The schizophrenia diagnosis refers to a mental illness characterized by positive and negative symptoms. The positive symptoms are hallucinations or delusions, while the negative symptoms are "things like lack of motivation, social withdrawal, not attending as well to hygiene." Rosalinda had, as of November 2011, reported auditory hallucinations, but Turpin himself had not observed positive symptoms in her. On cross-examination, he said he is not seeing positive symptoms of schizophrenia, because it is controlled with medication.

Obsessive-compulsive disorder involves the compulsion to do certain things or obsessional thoughts. Behavior Rosalinda exhibited included repetitive "digging in the trash, having to have things just so in certain ways, like one, always having to be last in line for meetings or medications . . . ." Such behaviors had occurred during the past three months.

Rosalinda's rating was 18 out of 100 on the Global Assessment of Functioning (GAF) scale. After further testimony, the court asked, "Is it fair to say, Doctor, that if the range is below 20, that that indicates that the person is a substantial risk of harm to themself [*sic*] or others?" Turpin answered, "Correct." However, later during cross-examination Turpin admitted he does not place much weight on the numerical portion of the GAF scale.

When asked whether Rosalinda is a danger to herself, he said, "[I]n our sort of supportive setting, that's not a major concern of mine currently. But in a less supportive setting, I would be." He then described the supports she receives at CPT, including being checked by staff every 15 minutes, mostly to monitor aggression toward others. She has not been able "to demonstrate a solid enough [two-week] period of no aggression within the context of the facility" to alleviate his concerns. "It could be a frank assault like striking somebody, it could be making a verbal threat, or significantly agitated enough

behavior that we are afraid it's putting people at risk. Like if Rosalinda basically throws a tantrum, goes into the dining hall and starts throwing chairs around." She is on a medication watch because she has a history of "cheeking" the medication and spitting it out. She has also had issues with obesity, allergies, hygiene and incontinence. Her hygiene had improved recently, but she still needed reminders to get up and go to the bathroom at night to avoid incontinence. As of the quarterly review on January 1, 2014, she was continuing to "urinate on herself intentionally as a part of her ritualistic behavior," requiring prompts from staff thereafter to get herself cleaned up. At her current level of supervision, Rosalinda is not allowed supervised group outings, much less unsupervised outings.

With regard to dangerousness to others, Turpin had a "significant concern" about Rosalinda. She hit her team leader on December 6, 2013, according to Turpin, and was "still having episodes where she will get agitated and start turning over or tossing chairs, making verbal threats, striking others."

There were also two aggressive episodes in September 2013 in which she pushed two peers and attempted to strike a staff member. In fact, the October 1, 2013 quarterly report indicated a total of eight incidents during the quarter, which included on separate occasions: (1) striking two peers with an open hand with light force on their backs; (2) grabbing and attempting to strike a staff member; (3) slapping staff "multiple times with light force after they prompted her to use the restroom"; (4) charging at and threatening to hit a staff member, then grabbing at her three times and scratching her on her hand, then stepping toward a peer in a threatening manner, saying, "Fuck you!"; (5) pushing someone on his or her back "with medium force"; and (6) charging toward a male staff member, attempting to assault him with her hands, and then scratching a staff member, requiring that Rosalinda be placed in a hold and walked outside. The quarterly report dated July 1, 2013 (covering April 1, 2013 through June 30, 2013) documented 23 incidents of assaultive behavior.

Turpin reported that Rosalinda continued to engage in assaultive behavior on five occasions during the most recent reporting period. Although her aggression had been

better the last three months, he opined that she was still currently a danger to others.  In explaining that conclusion he relied on:  "Her past history of assaults, her recent assaults, . . . her poor impulsive control, her diagnoses, her current treatment status, . . . cooperation with unit rules, her [in]ability to take safety directions consistently, and also whether she has been able to work up through the privilege levels, come off every-15-minute checks."  He opined that Rosalinda has serious difficulty controlling her dangerous behavior in part because of mental retardation.  At the time of his testimony, Turpin opined that Rosalinda was not ready to make a transition into the community.

On redirect examination, he was asked to clarify the relationship of the various diagnoses:  "If you were to completely remove the diagnosis of mental retardation, completely remove the diagnosis of the autism spectrum disorder, would the negative symptoms of her schizophrenia explain her dangerousness?"  He answered, "No."  On recross-examination, he was asked, "And you testified that you cannot tease out what part is what?"  He answered, "Correct."

Before Rosalinda was called as a witness, defense counsel filed a "Motion to Preserve Respondent's Privilege Against Self Incrimination," citing *Cramer v. Tyars* (1979) 23 Cal.3d 131.  After substantial discussion, the district attorney offered Rosalinda use immunity, and the court ordered her testimony sealed for purposes of criminal prosecution.  Defense counsel then made, and the court acknowledged, a continuing objection "[r]egarding the violation of her self-incrimination rights under both State and Federal Constitution."

As the testimony has been sealed, discussion of Rosalinda's testimony is omitted from this synopsis.  We have, however, reviewed that testimony in its entirety.

**DISCUSSION**

Counsel on appeal filed a *Wende* brief, asking us to conduct a full record review to determine whether there are any issues upon which we require briefing.  In addition to setting forth the facts and procedural posture of the case, counsel filed a declaration indicating he had discussed the case with a staff attorney at First District Appellate Project, had informed Rosalinda of his intention to file a *Wende* brief, had advised her

5

that she could request appointment of a new attorney, and had advised her that she may file a supplemental brief within 30 days.  We have not received a supplemental brief.

We begin by noting that *Wende* review is required only for "appointed appellate counsel's representation of an indigent criminal defendant in his first appeal as of right." (*In re Sade C.* (1996) 13 Cal.4th 952, 978.)  Acknowledging that this case arises in a different, noncriminal context, counsel nevertheless urges us to conduct a discretionary independent review of the entire record, relying on *Ben C.*, *supra*, 40 Cal.4th 529, 544, fn. 7, and the dissenting opinion in that case.  In *Ben C.*, at pages 537, 543, our Supreme Court held that *Wende* review is inapplicable in a proceeding brought under the Lanterman-Petris-Short Act.  (§ 5000 et seq.)  In so holding, *Ben C.* refused to extend the right to independent review by the appellate court to judgments that are civil in nature, even when those judgments result in the deprivation of a liberty interest.  (*Ben C.*, at pp. 535, 537, 544.)  Proceedings under section 6500 are predominantly civil, not criminal, in nature.  (*Cramer v. Tyars*, *supra*, 23 Cal.3d at p. 137.)

Cases decided after *Ben C.* have similarly resisted extending *Wende* review to other noncriminal contexts, including appeals similar to the one before us.  (*People v. Taylor* (2008) 160 Cal.App.4th 304, 308, 313 [*Wende* review not required in appeal from order declaring the appellant a mentally disordered offender]; *People v. Dobson* (2008) 161 Cal.App.4th 1422, 1425 [no *Wende* review of order denying outpatient status pursuant to petition to restore competency under Penal Code section 1026.2]; see also *In re Sade C.*, *supra*, 13 Cal.4th at p. 959 [pre-*Ben C.* case holding no *Wende* review in appeals from orders affecting parental custody in juvenile dependency cases].)  In accordance with the foregoing authorities, we conclude that mandatory whole record review similar to that required by *Wende* does not apply to section 6500 proceedings.

We are mindful, however, of the forceful dissent in *Ben C.* authored by former Chief Justice George and joined by Justices Kennard and Moreno, which stated, "It is undisputed that the private interests at stake are of the most fundamental nature, as the conservatee may be subjected to restraints upon physical freedom and personal autonomy for lengthy periods, and may be denied other basic civil rights as well." (*Ben C.*, *supra*,

6

40 Cal.4th. at p. 545.) As the dissent indicated, under the circumstances it is a small matter for the Court of Appeal "to confirm that proper procedures were followed and that the order is supported by sufficient evidence." (*Id*. at p. 555.) As also stated by the dissenting justices, "The majority's holding that independent review is not constitutionally required in LPS appeals in no way prevents the Courts of Appeal from expending the minimal effort required to provide these appeals with a second look and to provide an opinion that briefly notes the court has reviewed the record and that identifies the findings and evidence supporting the order." (*Id*. at p. 556.)

While asserting that we are not required to conduct a full record review, we elect in this case to exercise our discretion to do so, in part because the record is short and we are familiar with the case, having recently filed an opinion relating to it, and because a constitutional issue was vigorously presented in the trial court. After conducting the discretionary review requested by appellate counsel, we find no issues that require briefing on the merits. As recited above, there was substantial evidence to support the trial court's order of recommitment. Rosalinda was ably represented by counsel in the trial court, who filed not only the written motion referenced above, but a written trial brief. We have reviewed the cases cited in the trial court in relation to the self-incrimination issue, as well as Rosalinda's testimony. Given the immunity offered by the prosecutor and the protective measures taken by the court, we see no reason to require further briefing on that issue. Even disregarding Rosalinda's own testimony, the evidence that she fell within the statutory criteria was undisputed and overwhelming.

## DISPOSITION

The court's order extending the commitment from November 15, 2013 to November 15, 2014 is affirmed.

7

_____

Becton, J.*

We concur:

_____

Margulies, Acting P.J.

_____

Banke, J.

---

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.